Filed 10/17/22 Estate of Bennett CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| Estate of LUCIA REYES BENNETT, Deceased. | |
| JOSEPHINE BENNETT, Petitioner and Respondent, v. MONICA BENNETT, Objector and Appellant. | D078025 (Super. Ct. No. 37-2017-00049047-PR-LA-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Robert Longstreth, Judge. Affirmed.

Monica A. Bennett, in pro. per., for Appellant.

Josephine Bennett, in pro. per., for Respondent.

INTRODUCTION

Josephine Bennett and Monica Bennett are sisters engaged in litigation over the estate of their deceased mother, Lucia Reyes Bennett.[1] Monica, an attorney herself, is self-represented. Wishing to take Monica's deposition in advance of a mandatory settlement conference, Josephine served Monica with a notice of deposition. Monica did not respond. Josephine's attorney reached out to Monica one week before the noticed deposition date and, only then, did Monica indicate that she intended to object to the notice. Monica filed a motion to quash the notice of deposition four days later. The motion was the first and only written notice of Monica's objections received by Josephine or her counsel. The trial court denied Monica's motion and awarded sanctions in the form of attorney fees to Josephine, based in part on Monica's failure to adequately meet and confer before filing the motion to quash. Monica appeals the order awarding sanctions on several grounds, but none have merit. We affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

Josephine and Monica's mother, Lucia, died in October 2016. Lucia was survived by six adult children, including Monica and Josephine. The majority of Lucia's children believed she died intestate, but Monica claimed Lucia executed two holographic wills before her death, leaving her house to just three of the six children. Josephine filed a petition for probate in December 2017, and Monica filed a competing petition several months later, based on the alleged holographic wills.

---

[1] We refer to the members of the Bennett family by their first names to avoid confusion.

Josephine believed Monica had significant personal knowledge and access to documents relevant to the litigation. Monica lived with Lucia up until Lucia's death, and continued to live in Lucia's home after her death. Josephine began requesting Monica's deposition as early as October 2019.[2] That same month, the parties agreed a mandatory settlement conference (MSC) would be appropriate, and there was at least a possibility that the parties could reach a resolution. But, despite multiple requests, Monica never provided any potential dates for a deposition.

On January 31, 2020, Josephine served Monica with a notice of deposition. The notice set Monica's deposition for February 27, 2020, and included 30 requests for the production of documents. Monica did not respond, so Josephine's attorney, Amanda McCarty, initiated a telephone call with her on February 20, one week before the deposition was scheduled to occur. According to McCarty, the call was brief and lacked substance. Monica stated, generally, that she did not believe she needed to sit for a deposition or produce any documents. There was "no discussion as to the individual document requests, other than [Monica] making broad statements that the documents could be obtained from other sources and [the notice] was burdensome upon her." In a follow up email, dated February 24, McCarty asserted that Monica had not provided any justification for taking the deposition off calendar, and reiterated, "it is imperative that we obtain your testimony prior to the MSC set for early April."

Monica responded by filing a "motion to quash" the deposition notice and request for a protective order that same day. Monica asked the court to

[2]     Monica was represented by counsel for a short period of time, including October 2019. Her counsel substituted out of the case on December 20, 2019, and Monica has been a self-represented litigant since.

3

vacate the deposition notice; to limit the method of future discovery requests to written interrogatories or demands for production, rather than oral deposition; and, to limit the scope of the deposition "to matters which are relevant to the pending will contest." She also requested $5,000 in sanctions against Josephine for noticing the deposition and opposing the motion to quash. Although she had not previously provided written objections to the notice to Josephine's counsel, Monica attached detailed objections to each of the 30 requests for production as an exhibit to her motion.

Monica provided a short declaration in support of the motion, in which she asserted she had telephonically met and conferred with Josephine's counsel on February 20, 2020, before filing the motion to quash. She stated further: "This deposition appears designed to harass responding party. Although there were six beneficiaries I have been informed by [Josephine's counsel] that I am the only party in this case who is scheduled[d] for a deposition." Monica did not provide a memorandum of points and authorities or any other detailed arguments in support of the motion or, more specifically, her request to vacate the deposition.

McCarty asked if Monica was still willing to sit for the deposition, subject to the document objections. Monica declined. On February 28, 2020, Josephine filed an ex parte application to shorten time on the motion to quash or, in the alternative, to continue the MSC. Josephine asserted it was critical that Monica's deposition occur before the MSC. The trial court held a hearing on the ex parte application on March 13. Monica objected to the court "mov[ing her] motion forward." The trial court overruled the objection and issued the following ruling on the ex parte application: "1. To the extent that the motion to quash is addressed to oral testimony rather than

4

producing documents it is advanced to today and denied. [¶] 2. In all other respects the ex parte application is denied."

Less than a week later, the Governor issued stay-at-home orders due to the COVID-19 pandemic. As a result, the probate court suspended all hearings. Monica never sat for a deposition. The probate court eventually rescheduled the hearing on Monica's motion to quash, and Josephine filed an opposition. Josephine asserted Monica failed to reasonably meet and confer both before and after filing the motion, the motion did not comply with several local rules, and Monica failed to set forth an adequate factual or legal basis to support the motion or the request for sanctions.

Rather, Josephine asked the trial court to impose sanctions on Monica, in the form of reasonable attorney fees and costs, pursuant to Code of Civil Procedure section 2023.010.[3] Josephine argued sanctions were appropriate because Monica failed to respond to an authorized method of discovery, made evasive and unmeritorious objections without substantial justification, and failed to adequately meet and confer before filing her motion. McCarty provided a declaration detailing her hourly rate, the time she spent responding to the motion, and costs she incurred to secure a court reporter for the hearing on the motion.

Monica filed a "reply declaration" on June 19, 2020, the day of the hearing. She asserted the hearing had been temporarily reset for July 3, but "moved back" to June 19 (because July 3 was a court holiday), and once again objected to the court "advanc[ing]" the hearing. Although the trial court did not "see much warrant" to continuing the hearing, it agreed to do so out of an

_____

3     All further statutory references are to the Code of Civil Procedure. Section 2023.010 sets forth a nonexclusive list of "[m]isuses of the discovery process" subject to sanctions.

5

abundance of caution.  The court reset the hearing for July 10, but noted it was inclined to include any additional expenses incurred by Josephine as a result of the continuance in the sanctions award.

Monica filed an "objection" to the trial court's tentative ruling on July 6, 2020, just four days before the scheduled hearing.  Monica did not provide a declaration to support her "objection" but stated, in the objection papers, that she "did engage in a lengthy phone call" with Josephine's counsel on February 20, in which counsel "declined to limit her written discovery requests so as to comply with the requirements of Code of Civil Procedure 2016.010 et seq." (Some capitalization omitted.)  Monica asserted she did discuss her objections to the discovery requests on the call, but Josephine's counsel "was not open to negotiation."  In addition, Monica asserted she had a serious ongoing medical situation that precluded her from sitting for a deposition, and that an award of attorney fees would place "an unreasonable financial burden" on her.  Josephine objected to the filing as procedurally improper and asked the trial court to disregard it.

After hearing further argument from the parties, the trial court denied the motion to quash in its entirety and granted Josephine's request for sanctions.  The court noted both the "reply declaration" and the "objection" to the tentative ruling were filed late, but exercised its discretion to consider them anyway.  The court found Monica's objections to the document requests lacked merit, Monica failed to establish substantial justification for failing to respond to the discovery requests or for filing the motion to quash, and Monica failed to adequately meet and confer before filing the motion.  Accordingly, the court awarded sanctions against Monica in the amount of $7,657.50, to compensate Josephine for the reasonable attorney fees and costs she incurred responding to the motion.

6

Monica timely appealed.

## DISCUSSION

The sole issue on appeal is whether the trial court erred in imposing sanctions against Monica. "We review the trial court's order [imposing discovery sanctions] under the abuse of discretion standard and resolve all evidentiary conflicts most favorably to the trial court's ruling. We will reverse only if the trial court's order was arbitrary, capricious, or whimsical. It is appellant's burden to affirmatively demonstrate error and where the evidence is in conflict, we will affirm the trial court's findings." (*Williams v. Russ* (2008) 167 Cal.App.4th 1215, 1224; accord *Ellis v. Toshiba America Information Systems, Inc.* (2013) 218 Cal.App.4th 853, 878 (*Ellis*) [appellant "has the burden to demonstrate that the trial court erred, and where the evidence is in conflict we will not disturb the trial court's factual findings"].) We find no abuse of discretion in this case.

A trial court "may impose a monetary sanction ordering that one engaging in the misuse of the discovery process . . . pay the reasonable expenses, including attorney's fees, incurred by anyone as a result of that conduct." (§ 2023.030, subd. (a).) Here, after denying Monica's motion to quash, the trial court found Monica made "numerous meritless arguments" and failed to establish any reasonable justification for bringing the motion. Failing to respond or submit to an authorized method of discovery, making an unmeritorious objection without substantial justification, and making an unsuccessful motion to limit discovery without substantial justification are all misuses of the discovery process that subject a party to sanctions. (§ 2023.010, subds. (d), (e), (h).) The trial court's finding that Monica filed an unmeritorious discovery motion without reasonable justification alone supported the imposition of sanction.

7

The trial court, however, also found Monica failed to adequately meet and confer before filing the unmeritorious motion. The failure to confer with the opposing party "in a reasonable and good faith attempt to resolve informally any dispute concerning discovery" prior to filing a motion is also a misuse of the discovery process that subjects a party to sanctions. (§ 2023.010, subd. (i); see also § 2025.420, subd. (a) [motion for protective order must be accompanied by a meet and confer declaration].) In addition, pursuant to section 2030.010, "[n]otwithstanding the outcome of the particular discovery motion, the [trial] court *shall* impose a monetary sanction ordering that any party or attorney who fails to confer as required pay the reasonable expenses, including attorney's fees, incurred by anyone as a result of that conduct." (§ 2023.020, italics added.) Thus, the trial court both properly exercised its discretion to impose sanctions for Monica's various misuses of the discovery process, and was required to impose sanctions based on Monica's failure to adequately meet and confer before filing her motion. (See *Ellis, supra,* 218 Cal.App.4th at p. 879 [section 2023.020 requires sanctions against a party that fails to meet and confer].)

Monica asserts there was not substantial evidence to support the trial court's finding that she failed to adequately meet and confer before filing the motion to quash. (See *Obregon v. Superior Court* (1998) 67 Cal.App.4th 424, 430–431 (*Obregon*) [holding factual determinations underlying the imposition of sanctions are subject to the substantial evidence standard of review but "[a] determination of whether an attempt at informal resolution is adequate also involves the exercise of discretion"].) We disagree. In her initial filings, Monica relied solely on the February 20 telephone call to assert she fulfilled

8

the requirement to meet and confer.[4]  But she provided limited details regarding the nature and substance of the call.  She simply averred, "we discussed my objections" but "McCarty was firm in her intention to proceed with the deposition on the scheduled date and covering the noticed Demand for Production."

By contrast, McCarty, in her own declaration, described the telephone call as "brief" and lacking in substance.[5]  She explained that Monica did not discuss any individual document request.  Instead, Monica stated, generally, that she did not believe she needed to sit for a deposition or produce *any* documents.  McCarty also attached a copy of a confirming email she sent to Monica on February 24, 2020.  In the email, McCarty noted Monica had "highlighted objections [she] *may* have about certain document requests," and asserted any "objection to a *particular* document request" could be put on the record, but was not a reason to take the deposition off calendar.  (Italics added.)  Monica responded to the email by serving McCarty with a copy of the motion to quash, and asserting the motion automatically stayed the deposition.

Weighing the evidence, as it was entitled to, the trial court concluded the single telephone call, initiated by opposing counsel, was not adequate to

---

[4]     In her briefing on appeal, Monica asserts she "did email Amanda McCarty to inform her that she intended to file the motion and that they needed to meet and confer."  Monica provides no citation to the record to support her assertion, and the record itself contains no such email.

[5]     Monica asserts McCarty averred, in support of her request for attorney fees, that she spent 1.5 hours meeting and conferring with Monica, but the declaration actually states McCarty "spent at least 1.5 hours *trying* to meet and confer with M[onica] about the instant motion and the issues underlying the motion."  (Italics added.)

fulfill the requirement of a reasonable and good faith attempt to informally resolve the discovery dispute. (See *Ellis, supra,* 218 Cal.App.4th at p. 880 [" ' "[A] reasonable and good faith attempt at informal resolution entails something more than bickering with [opposing] counsel. . . . Rather, the law requires that counsel attempt to talk the matter over, compare their views, consult, and deliberate." ' "]; *Obregon, supra,* 67 Cal.App.4th at pp. 430–431 [trial court's weighing of credibility and perception of inherently factual matters "must not be lightly disturbed"].) McCarty's declaration, alone, is sufficient support for the trial court's finding.

Relying on *Obregon*, Monica asserts the adequacy of a party's attempts to meet and confer depends on the circumstances of the individual case and, here, contrary to the trial court's finding, the single telephone call was sufficient. (*Obregon, supra,* 67 Cal.App.4th at p. 431.) But, as Monica herself concedes, the issue in *Obregon* was whether an exchange of written letters addressing the adequacy of responses to specific discovery requests was sufficient to fulfill the pre-filing meet and confer requirement. (*Id.* at pp. 432–433.) The court noted, "[a] single letter, followed by a response which refuses concessions, might in some instances be an adequate attempt at informal resolution," but ultimately concluded, under the specific circumstances of the case, "the trial judge's decision that a greater effort at informal resolution should have been made [was] amply supported by [the] record." (*Ibid.*) Similarly, here, the trial court's finding that Monica did not make an adequate effort at informal resolution prior to filing her motion is amply supported by the record, and we see no reason to disturb it on appeal.

Monica's remaining arguments are equally unavailing. Monica asserts the trial court improperly "admonished" her for failing to appear for the noticed deposition on February 27, 2020. But it is apparent from the record

that the trial court did not consider Monica's failure to appear for the deposition in awarding sanctions against her. At the July 10 hearing, the court explained: "I don't understand this motion to have anything to do about your failure to appear for a deposition. That's not at issue. That had been ruled on, and I had denied the protective order in that respect, and, you know, then we moved on to deal with the document request, and, you know, that's what has brought us . . . here." Thus, any statements the court happened to make about the deposition were not relevant to its decision to impose sanctions, the sole issue on appeal.

Next, Monica asserts the trial court did not have jurisdiction to rule on the ex parte request because it improperly advanced the previously set date for her motion to quash. She argues that any "orders which are traced to the [court's ruling on the ex parte application], as well as the resulting sanctions, should be reversed." But, as we have just explained, the trial court's decision to impose sanctions was separate from its prior ruling on the ex parte application. Thus, the sanctions ruling cannot be "traced" to the prior ruling.[6] Regardless, Monica has not established that the trial court erred by advancing the motion. She cites a San Diego Superior Court, Division IV, Probate Local Rule, rule 4.4.2, which states, "*[u]nless otherwise ordered by the court,* when a hearing on a probate matter has been noticed . . . the matter cannot be heard before the date set, *either by means of a new petition, an amended petition, or by a new notice.*" (Italics added.) Here, the trial court

---

[6] We note as well that Monica did not appeal from the trial court's February 28, 2020 ex parte ruling, nor could she have, as the ruling was not independently appealable. (See *Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1432–1433 [concluding discovery orders are not independently appealable and limiting an appeal from an order imposing sanctions to the propriety of the sanctions].)

had good reason to hear the separate ex parte application in advance of the date originally set for Monica's motion. The deposition was critical to the upcoming MSC. Monica had already filed her papers on the motion to quash, and had an opportunity to respond to the ex parte application, both in writing and at the hearing. She presents no evidence or argument establishing she was prejudiced by the court's ruling, and there does not appear to be any violation of the local rule.

Next, Monica asserts the trial court erred by failing to consider the impact of certain emergency orders related to the COVID-19 pandemic on her ability to comply with the notice of deposition. As we have just explained, the imposition of sanctions was not tied to Monica's failure to sit for the deposition. And Monica does not demonstrate how the emergency orders impacted her ability to respond to the requests for production. She asserts, without evidentiary support, that the orders impaired her ability to locate or procure documents from the actual holders of information. But she does not explain how the orders prevented her from producing relevant documents that were already in her own possession, or, more specifically, in Lucia's home, where she continued to live. Regardless, Monica filed her motion, refusing to produce *any* documents, and without adequate attempts to informally resolve the dispute, on February 24, 2020, *before* the emergency orders went into effect.

Monica similarly asserts the pandemic and her own personal medical issues provided "substantial justification" for her non-compliance with the discovery requests and the pre-filing meet and confer requirement. This argument fails for the same reasons. Most notably, Monica does not explain *how* either the pandemic or her own medical issues precluded her from meeting and conferring with opposing counsel before filing her

12

motion.  Again, the stay-at-home orders were put into place only *after* Monica filed her motion to quash.  Monica included detailed objections to the individual requests for production in the motion and provides no explanation as to why she could not have provided those same objections to opposing counsel for discussion *before* filing the motion.

Finally, Monica asserts the amount of the sanctions award was "unjust" and unreasonable.  We disagree.  The trial court's award was based on McCarty's sworn declaration, in which she set forth her hourly rate, the time she spent responding to the motion to quash, and the costs incurred in providing a court reporter for the hearings on the motion.  (See *Argaman v. Ratan* (1999) 73 Cal.App.4th 1173, 1179 [monetary discovery sanction may be based on reasonable attorney fees and expenses incurred by the opposing party].)  Monica simply asserts "[t]his claimed time was excessive," but the trial court, familiar with the proceedings, rejected those same arguments.  The court noted Monica herself requested $5,000 in sanctions for responding to the deposition notice, and concluded McCarty's claimed hours were reasonable.  Monica fails to explain why we should reach a different conclusion on appeal.

Still, Monica asserts, even if the fees were reasonable, the award was "unjust" because it presents an unreasonable financial hardship to her.  The trial court considered and rejected this argument as well.  Monica asserted, in her objection to the court's tentative ruling, "per my Court confidential financial filings" that the requested sanctions "would place an unreasonable financial burden on me, such that imposition of sanctions in this sum would

13

be unjust per [section] 2025.450[, subdivision] (g)(2)."[7]  But, the trial court explained, "Monica does not identify these filings, nor does she provide any documentation to support this assertion."  It continued, "Monica is also a licensed attorney, and she has made numerous meritless arguments and failed to follow the proper procedures regarding this discovery dispute."  The court concluded, "Monica has failed to carry her burden in showing that sanctions would be unjust."

On appeal, Monica asserts she asked the trial court "to consider the fact that she was proceeding under a fee waiver to mitigate the amount of the sanctions which were ordered."  But we see no mention of the fee waiver in the trial court record.  (See *Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3 [reviewing court need not address arguments not raised in the trial court or developed on appeal].)  And Monica presents no authority to support her assertion that a party is not subject to sanctions for misuses of the discovery processes simply because they have a fee waiver on file.

Monica relies primarily on cases in which the courts have waived court issued fees, or precluded courts from requiring parties to pay private referee fees, to facilitate indigent access to the judicial process.  (See, e.g., *McDonald v. Superior Court* (1994) 22 Cal.App.4th 364 [trial court abused its discretion by delegating discovery matters to a private referee without considering economic hardship imposed on parties as a result]; *Solorzano v. Superior*

---

7     Section 2025.450, subdivision (g)(2), provides "the court shall impose a monetary sanction under Chapter 7 (commencing with Section 2023.010) . . . unless the court finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust."

14

*Court* (1993) 18 Cal.App.4th 603, 614–615 [same]; *Martin v. Superior Court* (1917) 176 Cal. 289 [confirming the right to bring a civil action *in forma pauperis*]; *Majors v. Superior Court* (1919) 181 Cal. 270, 279 [directing trial court to waive juror fees for plaintiff proceeding *in forma pauperis*]; *Bank of America Nat. Trust & Savings Assn. v. Superior Court* (1967) 255 Cal.App.2d 575, 577 [trial court has authority to waive security fees for *in forma pauperis* plaintiff].)  These cases do not address sanctions intended to compensate one party for the expenses they were forced to incur as a result of the other party's *misuse* of the litigation process without justification, like the sanctions issued here.  (See *County of Sutter v. Superior Court* (1966) 244 Cal.App.2d 770, 772 ["The poor litigant's fees are one matter, the opposite party's costs another.  To relieve an indigent plaintiff of public exactions is quite different than permitting him to conduct a lawsuit at the possible expense of his adversary."]; *Solorzano,* at p. 616 [noting discovery sanctions could be used to combat discovery abuses by any party, including indigent plaintiffs].)  As the trial court noted, Monica, a licensed attorney, made the choice to file the unmeritorious motion to quash without following the proper procedures.  Requiring her to compensate the opposing party for having to respond does not in any way impair her access to the judicial process.

Monica further asserts that imposing "sanctions without evaluating the parties' *relative* incomes challenges constitutional protections against [e]xcessive fines."  Again, Monica provides no authority to support the assertion.  At most, Monica provides a single citation to *People v. Dueñas* (2019) 30 Cal.App.5th 1157, which deals with a defendant's ability to pay *criminal* fines and fees.  *Dueñas* is in no way applicable to civil sanctions.  Monica also points out that *other* statutes, such as Family Code section 270, expressly require the trial court to consider the relative income of the parties

15

when imposing sanctions.  Had the Legislature wished to include such a provision in the statutes governing discovery sanctions, it certainly had the ability to do so.  It did not.  Regardless, Monica presented no evidence, in the trial court or on appeal, of Josephine's financial position relative to her own.  Thus, neither court had the ability to assess the *relative* incomes of the parties, even if it were relevant.[8]

## DISPOSITION

The order is affirmed.  Josephine Bennett is awarded her costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


DO, J.

WE CONCUR:


HUFFMAN, Acting P. J.


DATO, J.

---

[8]     Josephine asks this court to impose additional sanctions on Monica pursuant to section 907, which permits such additional sanctions when it appears the appeal is "frivolous or taken solely for delay." (§ 907.)  We decline to do so.  Josephine does not develop the argument, and, while we conclude Josephine's arguments lack merit, we are not convinced the appeal is frivolous or taken *solely* for the purpose of delay.