[No. C044210. Third Dist. Mar. 8, 2004.]

GREENBRIAR HOMES COMMUNITIES, INC., Petitioner, v.
SUPERIOR COURT OF SAN JOAQUIN COUNTY, Respondent;
ALBERT COURIS et al., Real Parties in Interest.

338

**COUNSEL**

Cox, Castle & Nicholson, Robert D. Infelise and Alicia N. Vaz for Petitioner.

John P. Dwyer for California Building Industry and Association of Home Builders Association of Northern California as Amici Curiae on behalf of Petitioner.

June Babiracki Barlow and Neil D. Kalin for California Association of Realtors as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Verboon, Milstein & Peter, Fred M. Adelman, Lee Jackson; Esner & Chang and Stuart B. Esner for Real Parties in Interest.

## OPINION

**NICHOLSON, J.**—By this action, petitioner challenges the trial court's denial of its motion to compel reference to a referee in the underlying action. It argues the trial court abused its discretion (1) by not determining the contractual reference provision on which petitioner relied is enforceable and not unconscionable, and (2) by denying the motion based on the alleged potential of a multiplicity of suits. We grant the petition in part.

## BACKGROUND

Petitioner's predecessor in interest constructed single-family homes in a Stockton development commonly known as Chantelane.[1] Real parties in interest are owners of Chantelane homes.[2] They brought individual actions

---

[1] For convenience, we refer to petitioner, Greenbriar Homes Communities, Inc., and its predecessors in interest, Greenbriar Homes Communities, LLC, and Greenbriar Blairmore Partners, L.P., collectively as petitioner.

[2] Petitioner named the following as real parties in interest: Albert & Kabline Couris, Albert & Teresa Garcia, Ami M. Dang, Andy & Shelly Nikitin, Angelina Novelozo, Ann M. Reid, Anthony F. & Belinda M. Costa, Arthur W. II & Lora E. Sandman, Azlena Lang, Barbara Silver & Jeannie Swanson, Bonifacio L. & Nolita Luna, Brian & Deborah Bartolomei, Carl & Tracy Mata, Carol J. Migliore, Carol Louise Cruz, Craig M. & Diane L. Crumpacker, Daniel L. & Judy K. Segraves, Danilo T. & Elsa N. Ursolum, Dannie & Barbara Odle, David A. & Raycine M. Sommers, David J. & Tammy S. Dodd, David W. Jr. & Michelle Coveney, Dominick & Andrene T. Mazzanti, Donald E. & Barbara Snell, Doug & Angela Titus, Duane & June Madden, Eddie Gene & Heather Wunsch, Eric & Karen Duran, Errol J. Sr. & Juanita F. Coustaut, Eugene Nord & Mary M. Thompson, Fred & Kathy M. Acosta, Gerd U. & Pamela Kerr Pretzel, Gordon K. C. & Colleen A. Lee, Jack Lee & Linda Marie Elphick, James Mandich & Carolyn Bishop, James W. & Leslie Andersen, Jannamarie E. Hines, Jean-Loree Armanino, Jennifer Hawkins, Jerry C. Jr. & Kristy D. Johnston, John Albert & Mary Abou-Elias, John & Michele Lease, John & Mindy Birkett, John & Rachael Jaramillo, John B. & Donna W. Yim, John Jr. & Virginia F. Geigle, John M. & Michelle R. Gabbard, John R. & Virginia L. Stevenson, Johnny H. Jr. & Debra L. Griffin, Johnny K. & Bonnie S. Lew, Jose T. & Gwen Aguero, Joseph N. & Maria Wasielewski, Judith A. McOwen, Justin & Barb Wilson, Kathleen D. & Rodney E. Van Nostern, Kathy Gardner & Karen Laack, Kenneth & Diane Knutson, Kevin & Nanette Fisher, Larry Lee & Margaret Ann Johnson, Lawrence & Gladys Grayson, Lawrence & Katherine Crumbly, Lester T. Iseri, Lloyd M. & Paulina E. Vestal, Luther & Nuiko Shimozaki, Lyndon & Theresa Tumakay, Maribel & Noel Jumaoas, Mark P. & Jane E. Thrift, Mark W. & Cathleen J. Conn, Matthew & Kimberly Merseth, Maurice L. Jr. & Marcia Benson, Michael S. & Janet M. Carey, Michael S. & Ramona L. Singer, Miguel DeToro & Susan L. Sherman, Mike & Cynthia Relloque, Milford L. Mullins, Nick Nguyen, Patricia D. Daniels, Paul & Marion Sachs, Philip & Lisa Debeaubien, Richard & Gayle L.

against petitioner to recover for damages allegedly suffered due to defective construction of their homes. The trial court consolidated their actions into the matter of *Acosta v. Greenbriar Homes Communities, Inc.*, San Joaquin Superior Court case No. CV018524, consolidated with case No. CV019335 and case No. CV020674.

Real parties' first amended complaint alleged 69 different homes were involved in the action. Of those, 43 were owned by real parties who purchased their homes from petitioner and were in privity of contract with petitioner (original purchasers). The remaining 26 were owned by real parties who were not the original purchasers and were not in privity of contract with petitioner (nonoriginal purchasers).

The purchase and sale agreements between petitioner and the original purchasers required all disputes arising out of the agreement to be determined by a judicial referee pursuant to Code of Civil Procedure sections 638–645.1. The parties agreed the referee was to decide all issues of fact and law and to issue a final judgment. The parties were to bear the costs of the judicial reference equally.

Pursuant to the reference agreement, petitioner filed a motion to compel the court to order the consolidated action be heard by a referee. At the same time, petitioner demurred to the first amended complaint and filed a motion to strike class action allegations.

Real parties opposed the motion to compel, arguing the agreement to decide all disputes by reference was unconscionable. They also claimed enforcing the reference provision would result in the original purchasers litigating in the reference proceedings while at the same time the non-original purchasers would be litigating in the trial court.

The trial court heard the motions on March 19, 2003. It granted the demurrer with leave to amend and granted the motion to strike, but it took the motion to compel under submission.

By ruling dated April 8, 2003, the trial court denied the motion to compel judicial reference. Its order stated simply, the motion "is hereby denied as it

Bastear, Richard Jon & Tamara L. Mecham, Robert & Robin Ceniceros, Robert Huynh & Tram T. Nguyen, Roland G. Corpus, Roqueta Harvey, Salvador & Kimberly K. Juarez, Salvador F. & Utona L. Guillen, Scott Alan & Laura Jean Berger, Shannon & Diane E. Martin, Stacy A. & Lisa A. Marks, Stephen K. & Julie K. Olson, Stephen P. Orlando, Tawfik & Fadia Zammar, Terry L. & Lisa M. Pruitt, Terry W. & Kristie D. Toler, Vernon M. & Lenore F. Uyeda, W. C. Logan, Wilfred K. F. Lee, William A. & Mary K. Kelley, William B. & Susan P. Belisario, and William M. & Meg A. Sorrells.

would cause multiplicity of lawsuits." The order said nothing on the issue of the reference provision being unconscionable.

Petitioner filed a motion for reconsideration. Petitioner argued new judicial authority required a different decision. Also, petitioner included with its motion, as supporting evidence, copies of contracts between it and its Chantelane subcontractors. The subcontractors had agreed that in a dispute between petitioner and third parties that resulted in petitioner making a claim against a subcontractor, petitioner could elect to bring the subcontractor into the forum that would determine the dispute between petitioner and the third party. Petitioner argued these provisions would prevent the problem of multiplicity feared by the trial court as any of real parties' claims against subcontractors would, at petitioner's election, have to be resolved in the reference proceeding.

Meanwhile, real parties filed their second amended complaint and named 45 subcontractors as Doe defendants. They also opposed the motion for reconsideration, claiming petitioner had failed to offer any new facts, law or circumstances warranting the motion.

The court commenced the hearing on petitioner's reconsideration motion by stating: "The Court denied the initial request for the stayed proceedings because it only applied to a few of the parties and not to all the parties. And I thought they would be duplicate litigation of the case if one was in the arbitration [*sic*] system and the other was in the court system."

By ruling dated June 5, 2003, the trial court denied petitioner's motion for reconsideration. It offered no explanation of its order.

Petitioner filed a demurrer to the second amended complaint. It also filed a writ petition in this court for relief from the trial court's denial of its motion to compel. We issued an alternative writ of mandate. We also stayed all further proceedings in the underlying action.

## DISCUSSION

A reference for private judging is called a general reference. The referee is empowered to "hear and determine any or all of the issues in an action or proceeding, whether of fact or of law" (Code Civ. Proc., § 638, subd. (a)), and to make a binding decision that "must stand as the decision of the court." (Code Civ. Proc., § 644, subd. (a).)

An order of general reference must be based on either the agreement of the parties filed with the clerk or judge or entered in the minutes or in the docket,

or the motion of a party seeking to enforce a written contract or lease that requires any controversy arising from it to be heard by a referee. (Code Civ. Proc., § 638.)

■ A predispute agreement for appointment of a referee is enforceable only if part of a "written contract or lease." (Code Civ. Proc., § 638.) The existence of such an agreement is determined under standard rules of contract interpretation. (See *Sy First Family Ltd. Partnership v. Cheung* (1999) 70 Cal.App.4th 1334, 1341 [83 Cal.Rptr.2d 340]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 800–804 [79 Cal.Rptr.2d 273].)

■ The parties' consent is essential for a general reference. (*In re Edgar M.* (1975) 14 Cal.3d 727, 734 [122 Cal.Rptr. 574, 537 P.2d 406]; *Murphy v. Padilla* (1996) 42 Cal.App.4th 707, 714 [49 Cal.Rptr.2d 722].) Absent consent, an order of general reference would be an unconstitutional "abdication of judicial responsibility." (*Aetna Life Ins. Co. v. Superior Court* (1986) 182 Cal.App.3d 431, 436 [227 Cal.Rptr. 460].)

On this just-discussed point, we concur in the trial court's ruling to the extent it denied petitioner's motion to compel with regards to the nonoriginal purchasers. Having never consented to judicial reference, they cannot now be forced to participate in a general reference by the court.

With the above principles in mind, we now turn to petitioner's remaining arguments as they apply to the original purchasers who agreed to judicial reference.

I

UNCONSCIONABILITY

The trial court made no determination regarding whether the reference provision in the sale contract was unconscionable. However, unconscionability was the real parties' main argument against the motion to compel. Because the issue is solely one of law (*Pardee Construction Co. v. Superior Court* (2002) 100 Cal.App.4th 1081, 1088 [123 Cal.Rptr.2d 288] (*Pardee Construction*)), is potentially dispositive, and because the parties' arguments on the issue are fully contained in the record, we address the issue here. We conclude the reference provision is not unconscionable.

"Although the 'doctrine of unconscionability' was judicially created [citation], Civil Code section 1670.5 now provides a statutory basis for refusing to enforce a contract which the court finds 'as a matter of law . . . to have been

unconscionable at the time it was made. . . .' The crucial term, 'unconscionable,' is not defined, but the law has clearly established that the term has both a procedural and a substantive element. The [procedural element] takes into consideration the parties' relative bargaining strength and the extent to which a provision is 'hidden' or unexpected, while the substantive element requires terms that 'shock the conscience' or at the least may be described as 'harsh or oppressive.' [Citation.] Both elements must be present, but 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' [Citation.]" (*Woodside Homes of Cal., Inc. v. Superior Court* (2003) 107 Cal.App.4th 723, 727 [132 Cal.Rptr.2d 35] (*Woodside Homes*).)

The reference provision at issue here appeared in standardized sale agreements used with each original purchaser. The provision, paragraph 16(f) of the sale agreement, appears in the same font and font size as most of the agreement's sections, and appears at the end of the agreement immediately above the signature block for the purchaser. The provision reads in full:

"(f) Judicial Reference

"(1) It is the desire and intention of the parties to agree upon a mechanism and procedure under which any controversy, breach or dispute arising out of this Agreement, will be resolved in a prompt and expeditious manner. Accordingly, except as otherwise provided in Paragraph 11 above [concerning arbitration of disputes over the use of deposit moneys as liquidated damages], any controversy, breach or dispute arising out of this Agreement, or relating to the interpretation of any term or provision of this Agreement, shall be heard by a reference pursuant to the provision of the California Code of Civil Procedure, Sections 638–645.1 inclusive;

"(2) The parties shall promptly and diligently cooperate with one another and the referee, and shall perform such acts as may be necessary to obtain prompt and expeditious resolution of the dispute or controversy in accordance with the terms hereof;

"(3) The Parties agree that the referee shall have the power to decide all issues of fact and law and report his/her decision hereon, and to issue all legal and equitable relief appropriate under the circumstances before him/her;

"(4) The parties shall agree upon a single referee who shall then try all issues, whether of fact or law, and report a finding and judgment thereon. If the parties are unable to agree upon a referee within ten (10) days of a written request to do so by any party, then any party may thereafter seek to have a referee appointed pursuant to the California Code of Civil Procedure Sections 638 and 640;

"(5) The cost of such a proceeding shall be borne equally by the parties to the dispute."

The provision is not procedurally unconscionable. There is no evidence the original parties had no meaningful choice not to agree to the reference, or that any of them attempted to negotiate this provision and were rebuffed. There also is no element of surprise in the provision. The provision is written clearly in the same sized font as the rest of the agreement, and is easily understood. The provision was not buried in the agreement, but in fact appeared at a location where the purchaser was almost certain to see it—immediately above where the purchaser would sign the agreement.

The provision is also not substantively unconscionable. Its terms are not so one-sided as to "shock the conscience," nor are they harsh or oppressive. It did not limit the amount or type of relief the original purchasers could obtain. By means of judicial reference, the provision attempted to ensure the parties would have their rights enforced and arguments resolved in as efficient and fair a manner available to them, consistent with the rules of procedure and evidence that apply to a trial. Even the referee' s fees were to be shared equally.

At trial, real parties argued the provision was unconscionable because it required them to shoulder half of the costs. They cited *Ting v. AT&T* (9th Cir. 2003) 319 F.3d 1126, 1151, where the federal court determined an arbitration agreement requiring customers to split the arbitrator's fees was categorically unreasonable because it imposed on consumers costs greater than they would bear if they filed the same complaint in court. *Ting* is distinguishable. The California Supreme Court has applied this categorical rule in the context of employment arbitration where the employee relies on an unwaivable statutory right (see *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 110–111 [99 Cal.Rptr.2d 745, 6 P.3d 669]), but it has specifically not determined the rule applies in consumer arbitrations. (*Cruz v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303, 317, fn. 3 [133 Cal.Rptr.2d 58, 66 P.3d 1157].)

One appellate court has determined the *Ting/Armendariz* rule does not apply in consumer arbitrations, in part because governing legislation reflects the Legislature's intent not to impose such a categorical rule. (*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 97 [7 Cal.Rptr.3d 267].) Instead, "[t]he determination that arbitral fees in consumer cases are unreasonable should be made on a case-by-case basis, with the consumer carrying the burden of proof." (*Ibid.*)

■ Statutes governing judicial references require the referee's fees be paid "as agreed by the parties." (Code Civ. Proc., § 645.1, subd. (a).) Here,

where the parties have agreed on payment of the reference costs in a consumer claim brought on contract and tort causes of action, we conclude the categorical rule espoused by the *Ting* court does not apply.

During oral argument and in response to our questioning, real parties asserted the risk of multiple actions proceeding in different forums was such as to render the agreements effectively unconscionable. However, real parties admitted no reported case supported this position. Moreover, any risk from multiple actions was significantly minimized by the petitioner contractually binding all of its subcontractors to join in actions against it no matter the forum. As a result, the trial court has the means both to enforce the valid reference provisions and to ensure a plaintiff's rights are not litigated concurrently in different forums.

■ Under these circumstances, we conclude the reference provision was not unconscionable. (Cf. *Pardee Construction, supra,* 100 Cal.App.4th 1081, 1089–1090, where the Court of Appeal determined a judicial reference clause in a real estate purchase contract was unconscionable in part because the provision was "buried in the form contracts," "physically difficult to read," suffered from a possibly misleading caption, was silent on referee fees, and prohibited the recovery of punitive damages.)

## II

### DENIAL BASED ON MULTIPLICITY OF LAWSUITS

■ Having determined the reference provision was not unconscionable, we must decide whether the trial court abused its discretion in not enforcing the provision against the original purchasers based on the possibility of multiple lawsuits. We conclude it did.

Because the provision was not unconscionable or otherwise invalid, petitioner claims the court had to enforce the provision. The court, petitioner argues, had no authority to ignore the valid agreement between the parties on the basis of multiplicity of actions.

Real parties, however, argue the court had discretion not to enforce the reference provision against the original purchasers. That discretion, they claim, is derived from analogous statutory authority given courts under Code of Civil Procedure section 1281.2 to refuse to enforce *arbitration* agreements pending a court action between a party to the arbitration agreement and a third party.

The statute requires a court to enforce an arbitration agreement unless the court determines, among other possibilities, a "party to the arbitration agreement is also a party to a pending court action or special proceeding with a

third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact. For purposes of this section, a pending court action or special proceeding includes an action or proceeding initiated by the party refusing to arbitrate after the petition to compel arbitration has been filed, but on or before the date of the hearing on the petition. [¶] . . . [¶]

"If the court determines that a party to the arbitration is also a party to litigation in a pending court action or special proceeding with a third party . . . the court (1) *may refuse to enforce the arbitration agreement and may order intervention or joinder of all parties in a single action or special proceeding*; (2) may order intervention or joinder as to all or only certain issues; (3) may order arbitration among the parties who have agreed to arbitration and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding; or (4) may stay arbitration pending the outcome of the court action or special proceeding." (Code Civ. Proc., § 1281.2, subd. (c), italics added.)

■ Code of Civil Procedure section 1281.2 is a specific statute that creates a special rule, which invalidates *only* arbitration agreements. Were it not for this statute, a court could refuse to enforce an arbitration agreement only upon such grounds as exist at law or in equity to invalidate any other contract. (*Armendariz v. Foundation Health Psychcare Services, Inc., supra,* 24 Cal.4th at p. 98.)

Real parties acknowledge Code of Civil Procedure section 1281.2 does not expressly apply to judicial references, but, relying on *Pardee Construction* and *Woodside Homes,* assert sufficient similarity between arbitration agreements and reference agreements allows the statute to authorize the trial court's ruling. Both of those cases concerned the enforceability of judicial reference provisions similar to the one before us. The *Pardee Construction* court ruled its provision was unconscionable; the *Woodside Homes* court ruled its provision was not unconscionable. The Court of Appeal, Fourth Appellate District, decided both cases.

In both, the courts commented the review of arbitration statutes was "informative" (*Pardee Construction, supra* 100 Cal.App.4th at p. 1093) and "justified" (*Woodside Homes, supra,* 107 Cal.App.4th at p. 727) when determining whether a reference provision was unconscionable. However, neither court stated the arbitration statutes created grounds outside of those existing at law or equity by which a court could invalidate reference agreements determined not to be unconscionable. Indeed, the *Woodside Homes* court specifically noted Code of Civil Procedure section 1298.7, another statutory exception to enforcing certain arbitration agreements, applied *only* to arbitration agreements and not to judicial reference agreements.

(*Woodside Homes, supra*, at p. 726, fn. 2.) Significantly, by concluding the reference agreements were not unconscionable, the *Woodside Homes* court determined the agreements *were* enforceable. (*Id.* at pp. 725, 736.)

At oral argument, real parties asserted if a court could not invalidate a judicial reference agreement due to multiplicity of actions, a ground on which Code of Civil Procedure section 1281.2 allows a court to invalidate an arbitration agreement, then by extension a court could also not invalidate a judicial reference agreement on the other grounds Code of Civil Procedure section 1281.2 provides for invalidating arbitration agreements, namely the right to compel arbitration has been waived or grounds exist for the revocation of the arbitration agreement. We disagree.

■ A general reference such as the one sought by petitioner may occur only upon the agreement of the parties. If one party has waived the right to compel or the agreement is subject to revocation, no such agreement exists. Code of Civil Procedure section 1281.2 does not provide courts with any additional authority they do not already have to refuse to enforce a waived or revoked term of agreement. Real parties cite us to no case holding the potential for multiple actions invalidates the parties' agreement to have all disputes decided by judicial reference.

Had the Legislature intended to allow judicial reference agreements to be invalidated on the basis of other pending or multiple actions, it could have adopted a statute so stating. Without such statutory authorization, however, both the trial court and we lack authority to invalidate an otherwise valid contractual agreement. "[W]e do not rewrite any provision of any contract [or any statute] . . . for any purpose." (*Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 968 [103 Cal.Rptr.2d 672, 16 P.3d 94].)

## DISPOSITION

The petition for writ of mandate against the trial court's order denying petitioner's motion to compel judicial reference of those claims brought by nonoriginal purchasers is denied. As to those claims brought by original purchasers, the petition is granted. The clerk of this court is ordered to serve a peremptory writ of mandate directing the respondent court to set aside and vacate its ruling of April 8, 2003, denying petitioner's motion to compel to the extent that order concerned claims brought by original purchasers.

Our stay of the underlying action is vacated upon finality of this opinion. The parties shall bear their own costs.

Scotland, P. J., and Davis, J., concurred.

On March 30, 2004, the opinion was modified to read as printed above.